## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN PANARELLO and SHERI PANARELLO, | : : : | |
| Plaintiffs, | : : | Civil. No. 12-4165 (RBK/JS) |
| v. | : : | **OPINION** |
| CITY OF VINELAND, et al., | : : | |
| Defendants. | : : : | |

**KUGLER**, United State District Judge:

This civil rights suit is before the Court upon the various motions and cross motions for reconsideration of this Court's opinion dated February 8, 2016 [Dkt. No. 186], reported at *Panarello v. City of Vineland*, --- F. Supp. 3d ---, 2016 WL 475246 (D.N.J. Feb. 8, 2016) (the "*Summary Judgment Opinion*"); the corresponding order dated February 8, 2016 [Dkt. No. 187] (the "Initial Order"); and the subsequent order to correct a clerical error dated February 17, 2016 [Dkt. No. 194] (the "Amending Order").

Before the Court are submissions from Defendant Sergeant Jeffrey Riggione ("Riggione") who has submitted a Motion for Reconsideration [Dkt. No. 195] ("Riggione Motion"); from Plaintiffs John Panarello ("Panarello") and Sheri Panarello (collectively, "Plaintiffs") who have submitted a Motion for Leave to File Out of Time [Dkt. No. 199] ("Plaintiffs' Motion for Leave") and a Motion for Reconsideration [Dkt. No. 200] ("Plaintiffs' Motion"); from the four individual police officers, Adam Shaw, Matthew Laielli, Brian Armstrong, and James Day (collectively, the "Officer Defendants"), who have submitted a Cross Motion for Reconsideration [Dkt. No. 203] ("Officer Defendants' Cross Motion"); and from

1

Defendants Detective Antonio "Pete" Ramos ("Ramos") and his wife, Jeanne Ramos (collectively, the "Ramos Defendants"), who have submitted a letter requesting additional relief from this Court [Dkt. No. 205] ("Ramos Letter").

For the reasons that follow, the Riggione Motion is **GRANTED**, Plaintiffs' Motion for Leave is **DENIED**, Plaintiffs' Motion is **DENIED**, the Officer Defendants' Cross Motion is **GRANTED**, and the request of the Ramos Letter is **GRANTED-IN-PART AND DENIED-IN-PART**.

## I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court set out the lengthy factual background and procedural history of this case in its *Summary Judgment Opinion*, 2016 WL 475246, at *1–3, and reincorporates that portion of the original opinion as if recited herein.  Subsequent procedural facts and the contents of the opinion are relevant to the disposition of the motions pending before the Court.

### A.        THE COURT'S FINDINGS IN THE *SUMMARY JUDGMENT OPINION*

The Court in its *Summary Judgment Opinion* determined that most of Plaintiffs' claims would be dismissed.  The Court disposed of state law tort claims that were not adequately noticed by the Plaintiffs' Notice of Claim, pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:1–1, et seq. ("NJTCA").  *Summ. J. Op.*, 2016 WL 475246, at *4–6.  The Court went on to consider the constitutional claims made against the individual actors under the federal and state constitutions.  First, claims of constitutional conspiracy were found to be unsupported by proffered evidence.  *Id.* at *7–8.  Additionally, the Court noted that the Ramos Defendants had not moved for summary judgment of any claims against them, so despite a finding that the claim of constitutional conspiracy was unsupported, the Court would not dismiss a claim of constitutional conspiracy against them.  *Id.* at *7 n.11.  Next, the Court satisfied itself that it

could consider Panarello's claims regarding events leading up to his criminal conviction without running afoul of the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *Id.* at *8–9.  Having done so, the Court evaluated Plaintiffs' Fourth Amendment claims in detail.

The Court found that the officers' initial entry onto Plaintiffs' driveway was permissible and could not be the basis for a Fourth Amendment violation.  *Id.* at *9–10.  The Court then rejected the Officer Defendants' entry into the backyard based on a theory of customary access as a matter of law, and permitted the Fourth Amendment claim to go forward based on the factual dispute over whether Panarello was exposed to public view at the time the Officer Defendants began effecting his arrest.  *Id.* at *10–13.  Turning to Panarello's claims of excessive force, the Court determined that the specific factual finding of the state court that Panarello was not entitled to use force to resist his arrest in Panarello's criminal conviction foreclosed any argument by Panarello that the arresting officers used excessive force in effecting his arrest due to the *Heck* doctrine.  *Id.* at *14–15.  The Court then denied summary judgment on the allegations of excessive force during Panarello's transport to the police station and the reasonableness of using oleocapsicum ("OC") spray in the booking room at the police station due to the presence of genuine issues of material fact.  *Id.* at *15–16.

Next, the Court assessed the claims of retaliatory complaints, malicious prosecution, and abuse of process.  The Court recognized that no moving defendant had requested summary judgment on the alleged First Amendment retaliatory prosecution grounds, and so explained that any claim survived summary judgment due to a failure to move.  *Id.* at *17.  The Court found that the claims of malicious prosecution failed because either Panarello was actually convicted of the charge in the complaint, the charge in the complaint was related to conduct for which Panarello was convicted, or the charge in the complaint was supported by probable cause.  *Id.* at

*17–20.  The Court also determined that there was insufficient evidence from Panarello that there was any abuse of process.  *Id.* at *20.

The Court continued on to evaluate constitutional claims against the City of Vineland and its chief of police, Chief Timothy Codispotti.  The Court found no evidence of a policy or custom effecting unconstitutional arrests, no evidence of a failure to train or supervise, and finally no evidence to tie an alleged unconstitutional ordinance to the alleged unconstitutional conduct of the individual officers.  *Id.* at *20–23.  The Court finally turned to the remaining state law tort claims, and found that the City of Vineland had no liability for any intentional torts of the officers, *id.* at *23, that claims of assault and battery during Panarello's arrest were barred by the *Heck* doctrine, *id.* at *24, that claims of false arrest were precluded by the presence of probable cause at the time of Panarello's arrest, *id.*, that a claim for "negligent personal injury" could not lie, *id.*, that a claim for negligent training and supervision failed for the same reasons the constitutional claim failed, *id.* at *25, that Sheri Panarello's per quod claim had to be dismissed because there was no surviving claim related to Panarello's arrest from which her claim could derive, *id.*, and that Sheri Panarello's claim for negligent infliction of emotional distress had to be dismissed for lack of evidence of any emotional distress, *id.* at *25–26.

The Court at the conclusion of the *Summary Judgment Opinion* acknowledged the length and complexity of the decision, and so explicitly recited for the parties what claims the Court believed to remain in the case as a result of the opinion.  *Id.* at *26–27.  The Court issued the *Summary Judgment Opinion* and entered the Initial Order to be consistent with the opinion on February 8, 2016.

**B.      PROCEEDINGS AFTER ENTRY OF THE *SUMMARY JUDGMENT OPINION***

Subsequent to the entry of the Initial Order, on February 10, 2016, counsel for Riggione wrote to the Court to apprise the Court of a clerical error contained within the Initial Order.  (*See* Benson Letter [Dkt. No. 189] at 2.)  The Initial Order failed to dismiss one count of the First Amended Complaint ("FAC") [Dkt. No. 79] consistent with the *Summary Judgment Opinion*, and so the Court entered the Amending Order on February 17, 2016 to correct this error.  (*See* Amending Order.)

In the letter from Riggione's counsel was also a request for supplemental briefing on the issue of First Amendment retaliatory prosecution.  (*See* Benson Letter at 1–2.)  Counsel represented that the claim was not addressed in briefs because the moving defendants were unaware that the FAC contained such a claim, and that if they had been aware, they would have addressed it.  (*See id.* at 2.)  Mr. Benson represented that counsel for the Officer Defendants also joined in his request.  (*Id.*)  Plaintiffs opposed any supplemental briefing by written letter filed with the Court on February 11, 2016, and recommended that any Defendant unsatisfied with the Court's decision move for reconsideration.  (*See* First McFadden Letter [Dkt. No. 191].)[1] Accordingly, Riggione filed such a motion on February 22, 2016.  (*See generally* Riggione Mot.)

On March 2, 2016, Plaintiffs filed under seal a twenty-five page, single-spaced letter with sixteen attachments that purported to be a letter brief seeking reconsideration of the *Summary Judgment Opinion*.  (*See* McFadden Letter Br. [Dkt. No. 196].)  The next day, the Honorable Joel Schneider, United States Magistrate Judge, struck the submission, instructing Plaintiffs to comply with this district's Local Civil Rules if they intended to file a motion, and further

---

[1] Plaintiffs re-filed the letter the next day to expressly indicate that counsel for all parties were copied on the letter.  (*See* Second McFadden Letter [Dkt. No. 192].)

instructing Plaintiffs to comply with Local Civil Rule 5.3 if they desired to file anything under seal.  (*See* Order (Mar. 3, 2016) [Dkt. No. 197] (the "Schneider Order").)  Plaintiffs re-filed the identical twenty-five page, single-spaced letter as a motion brief the same day, accompanied by Plaintiffs' Motion for Leave.  (*See* Pls.' Mot. Br. [Dkt. No. 200-1]; Pls.' Mot. Leave.)  Plaintiffs also filed supplemental exhibits under seal without an accompanying motion to seal.  (*See* Pls.' Add'l Ex. [Dkt. No. 201].)

On March 7, 2016, the Officer Defendants filed a Cross Motion for Reconsideration joining in and relying on Riggione's Motion.  (*See* Off. Defs.' Cross Mot.)  Plaintiffs opposed Riggione's Motion and the Officer Defendants' Cross Motion on March 9, 2016.  (*See* Pls.' Opp. [Dkt. No. 204].)  On March 21, 2016, all defendants submitted briefs opposing Plaintiffs' Motion.  (*See* Off. Defs.' Opp. [Dkt. No. 206]; Muni. Defs.' Opp. [Dkt. No. 207].)  On the same day, counsel for the Ramos Defendants submitted a letter to the Court joining in the oppositions to Plaintiffs' Motion and requesting that two counts of the FAC—Count V for constitutional conspiracy and Count VI for assault and battery as well as common law conspiracy—be dismissed as against the Ramos Defendants.  (*See* Ramos Letter.)  Plaintiffs consented to the Ramos Defendants joining in the oppositions and to the dismissal of the conspiracy claims, but oppose any dismissal of the assault and battery claim.  (*See* Third McFadden Letter [Dkt. No. 208].)

## II.    JURISDICTION

Plaintiffs' claims as stated in the FAC are claims under 42 U.S.C. §§ 1983, 1985, and 1986, as well as under the state constitution and state common law.  The Court accordingly exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and supplemental jurisdiction over the accompanying state law claims pursuant to 28 U.S.C. § 1367.

### III.   LEGAL STANDARD

In this District, Local Civil Rule 7.1(i) governs motions for reconsideration.  Local Civil Rule 7.1(i) will apply rather than Federal Rule of Civil Procedure 59 or 60 where no final judgment has been entered, but only a partial grant or denial of summary judgment.  *See Warner v. Twp. of S. Harrison*, 885 F. Supp. 2d 725, 747–48 (D.N.J. 2012).  However, the standard for evaluating the request is the same.  *Id.*

"The scope of a motion for reconsideration . . . is extremely limited."  *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).  "The purpose of a motion for reconsideration is 'to correct manifest errors of law or fact or to present newly discovered evidence.'"  *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).  A motion for reconsideration "must rely on one of three grounds:  (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  *Id.* (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

"A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden."  *Facteon, Inc. v. Comp Care Partners, LLC*, Civ. No. 13-6765, 2015 WL 519414, at *1 (D.N.J. Feb. 9, 2015) (quoting *G–69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990)).  "A motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple."  *Tishcio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

IV.     **DISCUSSION**

    A.     **RIGGIONE'S MOTION**

As an initial matter, Defendants[2] mischaracterize both the *Summary Judgment Opinion* and the FAC in explaining why the Court should dismiss Count II of the FAC.  Defendants submit that "it appears that perhaps even the Court was uncertain as to whether the complaint did, in fact, allege a First Amendment Claim based on retaliatory prosecution."  (Riggione Mot. at 4.)  However, the Court in stating "to the extent this allegation presents a theory of liability for retaliation under the First Amendment," *Summ. J. Op.*, 2016 WL 475246, at *17, was not expressing doubt about whether Count II contained a claim for retaliatory prosecution under the First Amendment.  The Court was stating that Count II would survive *only* with respect to such a claim.  *Cf. id.* at *6 ("To the extent that any of the same facts underlying these state law torts provide the basis for a claim under the NJCRA or § 1983, they will be analyzed under the appropriate standards for those claims.")

Similarly, Defendants submit that even Plaintiffs were unaware that Count II contained such a claim, and that "if it had been clearly pled, or if defense counsel had appreciated the Second Count of the Complaint could be interpreted as alleging such a cause of action, the claim could have easily been addressed."  (Riggione Mot. at 4.)  The FAC explicitly alleged that Count II was being brought against the individual officers on the basis that they had allegedly "ma[de] police reports and authoriz[ed] and/or fil[ed] criminal complaints that were knowing[ly] false and inaccurate, with the motivation and intent to *retaliate* against the Plaintiff . . . in violation of

---

[2] Throughout this section, when the Court refers to "Defendants", it is to the four defendants moving for reconsideration who also moved for summary judgment—Jeffrey Riggione, Matthew Laielli, Adam Shaw, and Brian Armstrong.  Otherwise, the Court will refer to Riggione independently or as part of the Municipal Defendants, and to the three officers collectively as part of the Officer Defendants.

his civil rights guaranteed under the *First*, Fourth and Fourteenth Amendments." (FAC Count II ¶ 6 (emphases added).) The FAC, although certainly not a model of clarity, was unequivocal in asserting a First Amendment retaliation claim.

The Defendants argue that the Court's decision to permit the First Amendment retaliation claim was "somewhat sua sponte" because Plaintiffs did not argue the existence of the claim as a reason for denying summary judgment. (Riggione Mot. at 3–4.) However, this misses the point. The Court could not enter judgment on a claim for which the Defendants did not carry their burden. Even where a motion for summary judgment is unopposed, the Court is still required to go through an analysis of the unopposed facts to determine if summary judgment is appropriate. *See S.E.C. v. J.W. Barclay & Co.*, 442 F.3d 834, 840 (3d Cir. 2006) (engaging in legal analysis of an unopposed motion for summary judgment); *see also Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir. 2006) ("[E]ntry of a summary judgment motion as unopposed does not automatically give rise to a grant of summary judgment."); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgement if the movant shows that . . . the movant is entitled to judgment as a matter of law."). Additionally, as pointed out by Plaintiffs, there is no requirement to "argue in opposition papers against something that was not requested in moving papers." (Pls.' Opp. at 1.) Plaintiffs were only required to oppose that which Defendants moved for.

Defendants submit that because probable cause is a defense to a First Amendment retaliatory prosecution claim, and because the Court determined probable cause supported all criminal charges, it would be a manifest injustice to permit the First Amendment retaliation claim to proceed. (Riggione Mot. at 4–5.) Plaintiffs respond that Defendants are merely seeking a second bite at the apple in this motion, having waived their ability to raise the argument by failing to raise it in any of their initial moving papers. (Pls.' Opp. at 1.) Plaintiffs additionally

point to evidence in their own motion for reconsideration which they argue supports an affirmative finding that Defendants actually did commit the offense in quest.  (Pls.' Mot. Br. at 17–18.)

Even though Plaintiffs had no obligation to argue in support of their First Amendment retaliation count in the absence of argument from Defendants on the issue, and even though Defendants failed to argue this issue in their initial moving papers, the Court nonetheless will grant the motion to reconsider on the grounds that not doing so would be a manifest injustice.  In order to prevail on a claim for retaliatory prosecution, "plaintiffs cannot succeed without proving an absence of probable cause."  *Miller v. Mitchell*, 598 F.3d 139, 153–54 (3d Cir. 2010) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)).  With the finding by the Court that all charges were supported by probable cause, Plaintiffs cannot possibly succeed on a retaliatory prosecution claim.  It would be nonsensical to require a jury to hear evidence from Plaintiffs on such a claim, and would work manifest injustice to Defendants to have to argue against the claim at a later stage.  As such, Riggione's Motion as joined by the Officer Defendants Cross Motion will be granted, and the claim of First Amendment retaliation will be dismissed.  With that claim dismissed against Riggione, there are no more pending claims against Riggione and he will be dismissed as a party to this action.

### B.     PLAINTIFFS' MOTION

Plaintiffs' Motion is plagued by a number of procedural issues, with the result that the Court will deny the motion entirely.  There are also a number of issues that the Court will address regarding the merits of the motion, even though Plaintiffs' Motion is procedurally infirm.

### 1.     Procedural Issues

There are four main procedural issues with Plaintiffs' Motion:  (1) reliance on the incorrect governing rule; (2) improper length of the moving brief; (3) timeliness of the motion; and (4) failure to file a motion to seal when submitting exhibits under seal.  Each will be discussed in turn.  All counsel in this action are advised that the Court expects that all counsel will familiarize (or re-familiarize, as appropriate) themselves with the Local Civil Rules of this District and strictly comply with the Local Civil Rules, the Federal Rules of Civil Procedure, and all orders of this Court.  Failure to do so may result in the imposition of sanctions going forward.

### i.     Local Civil Rule 7.1(i) Governs This Motion

To begin with, Plaintiffs incorrectly rely on Federal Rues of Civil Procedure 60(b) and 59(e).  (Pls.' Mot. Br. at 1–4.)  A motion under Rule 60(b) or Rule 59(e) is only appropriate when final judgment has been entered on all claims; where only a partial grant or denial of summary judgment has been entered, a motion pursuant to Local Civil Rule 7.1(i) is the appropriate vehicle by which a party should seek reconsideration.  *Warner*, 885 F. Supp. 2d at 747–48 ("The provisions of Rule 59 are designed to address ordered rendering a final judgment, not interlocutory orders partially denying summary judgment.  Because no final judgment has been entered in this action pursuant to Rule 54(b), the provisions of Rule 59, and its 28-day time limit, are inapplicable here."); *see also* Fed. R. Civ. P. 60(b) ("[T]he court may relieve a party . . . from a *final* judgment . . . ." (emphasis added)).  Accordingly, all arguments to the provisions of Rule 59 and Rule 60 will be disregarded by the Court.

### ii.     Plaintiffs' Motion Fails to Comport with Local Civil Rule 7.2

Next, the Court addresses the length of Plaintiffs' Motion Brief.  Local Civil Rule 7.2 is very clear on what judges in this District will permit for briefs:

(b)  Any brief shall include a table of contents and a table of authorities and shall not exceed 40 ordinary typed or printed pages (15 pages for . . . any brief in support of or in opposition to a motion for reconsideration submitted under L.Civ.R. 7.1(i)), excluding pages required for the table of contents and authorities.  Briefs of greater length will only be accepted if special permission of the Judge or Magistrate Judge is obtained prior to submission of the brief.

. . .

(d)  Each page of a brief shall contain double-spaced text and/or single spaced footnotes or inserts.  Typeface shall be in 12-point non-proportional font (such as Courier New 12) or an equivalent 14-point proportional font (such as Times New Roman 14).  If a 12-point proportional font is used instead, the page limits shall be reduced by 25 percent (e.g., the 40 page limit becomes 30 pages in this font and the 15 page limit becomes 11.25 pages).

L.Civ.R. 7.2(b), (d).

Plaintiffs' Motion Brief flies in the face of this rule.  Plaintiffs' Motion Brief is a 25-page, single-spaced "letter brief" written in a 12-point proportional font.  This translates to a 50-page double-spaced brief.  Even if this motion were one under Rule 59 or Rule 60 and not one under Local Civil Rule 7.1(i), Plaintiffs would have been limited to 40 double-spaced pages with a 12-point non-proportional font, or 30 double-spaced pages with a 12-point proportional font.  Plaintiffs' Motion Brief includes neither a table of contents, nor a table of authorities.  On this basis alone, the Court could disregard Plaintiffs' Motion for failure to comply with the basic rules of this District.[3]  *See Fink v. EdgeLink, Inc.*, Civ. No. 09-5078 (NLH/KMW), 2012 WL 6616492, at *1 (D.N.J. Dec. 19, 2012) (denying reconsideration on the basis of the moving brief being 30 pages instead of 15).  However, this is not the end of the procedural issues with Plaintiffs' Motion.

---

[3] The Municipal Defendants' Opposition does not comply either, but in light of the failure of the moving brief to comply, the Court takes a less stern view toward the conduct of the Municipal Defendants' counsel in this manner.

### iii.    Plaintiffs' Motion is Untimely

Additionally, there is the issue of timeliness.  Failure to timely file a motion pursuant to Local Civil Rule 7.1(i) is itself a basis for denying the motion.  *See, e.g.*, *Red Roof Franchising LLC, Inc. v. AA Hosp. Northshore, LLC*, 937 F. Supp. 2d 537, 543 (D.N.J. 2013), *aff'd sub nom. Red Roof Franchising, LLC v. Patel*, 564 F. App'x 685 (3d Cir. 2014).  The Court entered the *Summary Judgment Opinion* and Initial Order on February 8, 2016.  Any motion for reconsideration was required to "be served and filed within 14 days after entry of the order or judgment on the original motion by the Judge."  L.Civ.R. 7.1(i).  Thus, the motion was due by February 22, 2016.

However, Plaintiffs contend that they are actually seeking reconsideration of the Amending Order, which was entered on February 17, 2016, making any motion for reconsideration due by March 2, 2016.  (Pls.' Mot. Br. at 1.)  Plaintiffs submit that by filing their subsequently-stricken motion on March 2, 2016, they complied with the timeliness requirements.  (*Id.*)  This argument is repeated within Plaintiffs' Motion for Leave, wherein they submit that the motion was timely filed on March 2, 2016.  (Pls.' Mot. Leave Br. [Dkt. No. 199-1] at 1.)  This argument is wholly without merit.

The purpose of the Amending Order was to correct a clerical error in failing to include Count XVI as one of the dismissed counts.  The Initial Order disposed of every claim with the exception of Count XVI, the claim for fraudulent concealment of evidence.  Thus, with respect to every issue raised by Plaintiffs other than Count XVI, Plaintiffs' Motion is clearly untimely.

Even with respect to Count XVI, the *Summary Judgment Opinion* clearly explained that the Court was granting the motions for summary judgment of the various defendants "for spoliation or concealment of evidence" due to Plaintiffs' failure to comply with the NJTCA.  *Summ. J. Op.*, 2016 WL 475246, at *6.  Further, the Court at the conclusion of the *Summary*

*Judgment Opinion*, in order to make clear what counts remained at the conclusion of a lengthy opinion, specifically enumerated what counts of the FAC would remain, stating that "[a]ll other claims, as explained above, will be dismissed." *Id.* at *26–27.  Count XVI was not among the remaining claims.  *Id.*  Accordingly, even with respect to Count XVI, the motion is untimely.  As a result, Plaintiffs' Motion is untimely as to all arguments and will be denied.

### iv.     Plaintiffs Failed to Comply with Local Civil Rule 5.3(c) and the Order of Magistrate Judge Schneider

Finally, in support of their motion, Plaintiffs also opted to file seven documents under seal.  (*See* Pls.' Add'l Ex.)  This was after Plaintiffs initially filed their motion as an under seal letter, which Magistrate Judge Schneider struck.  (*See* McFadden Letter Br.; Schneider Order.) The Schneider Order was clear in its directive to Plaintiffs' counsel:  "[I]f plaintiff requests to seal his motion, he shall file a motion to seal in compliance with L.Civ.R. 5.3."  No motion to seal was ever filed, much less one that could be in compliance with Local Civil Rule 5.3.  Thus, the Court will strike the documents.

### 2.     Plaintiffs' Motion Fails on the Merits

Even if this Court were not denying Plaintiffs' Motion for its many procedural issues, Plaintiffs' Motion would fail on the merits.  Simply put, Plaintiffs' Motion is seeking the prohibited "second bite at the apple."  *See Tishcio*, 16 F. Supp. 2d at 533.  The Court will not discuss every argument put forth by Plaintiffs, as this would essentially render the findings of Section IV.B.1, *supra*, moot.  However, to clarify certain misconceptions that appear in Plaintiffs' Motion, the Court will address some of the arguments made.[4]

---

[4] Specifically, the Court will not address the argument related to the Court's dismissal of Plaintiffs' conspiracy claims, (Pls.' Mot. Br. at 8–9), the Court's finding of probable cause with respect to resisting arrest, (*id.* at 12–13), the Court's determination that there is a dispute of fact

### i.   Disputed Facts Regarding Entry onto Property and Arrest of Panarello

Plaintiffs argue that this Court accepted certain facts as undisputed and thus mistakenly relied on these facts in support of its later legal conclusions.  (*See* Pls.' Mot. Br. at 4–6, 9–11.) Plaintiffs seek to introduce new exhibits in support of the fact that the facts were undisputed. (*See id.* at 5.)  A motion for reconsideration is "*not* an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers."  *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 614 (D.N.J. 2001).  Thus, it is improper to introduce new exhibits with a motion for reconsideration, unless the exhibits were somehow unavailable when the original motion was decided.  There can be no serious argument that testimony of Plaintiffs was not available at the time the original motions were decided, thus the Court would not permit Plaintiffs to try and argue based on that testimony now.

Additionally, Plaintiffs appear to back away from their own submissions.  As an example, Plaintiffs specifically take issue with "the Court's reference to [Plaintiffs' Cross Motion Statement of Undisputed Material Facts] ¶¶ 26–28" as support for its ruling. . . . Plaintiffs did not submit these facts as 'undisputed.'"  (Pls.' Mot. Br. at 10.)  However, when turning to the cited reference, Plaintiffs could not have been clearer:  "The VPD officers' deposition and municipal court testimony also support the following *undisputed* facts."  (Pls.' Cross Mot. SMF[5] ¶ 26

---

as to where Panarello was located in his backyard, (*id.* at 13), the Court's dismissal of the *Monell* claims, (*id.* at 20–21), the Court's dismissal of state law claims that substantial duplicate Section 1983 claims that were dismissed, (*id.* at 21–23), or the Court's dismissal of Sherri Panarello's claims, (*id.* at 23–24).  These arguments present no more than recapitulation of Plaintiffs' initial arguments, rely on positions which the Court will address in relation to other arguments in this opinion, or improperly seek to admit new evidence into the record that was not introduced previously.  Additionally, the Court will not address the First Amendment retaliation claim in the context of Plaintiffs' Motion, (*id.* at 17–18), having already addressed it in the context of Riggione's Motion.

[5] [Dkt. No. 166-1] at 25–45.

(emphasis added).)  Similarly, Plaintiffs now argue that the officers "did not say a word to John Panarello" prior to tackling him.  (Pls.' Mot. Br. at 4–5.)  This argument is despite Plaintiffs explicitly agreeing with, and adopting, the statement from the Officer Defendants that "Officer Laielli called out to John Panarello, and said 'Yo, I need to talk to you.'"  (Pls.' Resp. to Off. Defs.' SMF[6] at 8.)  Plaintiffs' position that these facts are now disputed in both instances is absurd.

Thus, even if the Court were to consider the merits of Plaintiffs' Motion, with respect to this issue, the motion would fail.

### ii.        Plaintiffs Failed to Substantially Comply with the NJTCA

Plaintiffs also argue that this Court should reconsider its ruling that Plaintiffs' Notice of Claim pursuant to the NJTCA did not adequately notify the City of Vineland that Plaintiffs would be bringing claims of assault and battery for the transport of Panarello to the police station, assault and battery for the use of OC spray at the police station, abuse of process, malicious prosecution, and spoliation of evidence.  (Pls.' Mot. Br. at 6–7.)  Plaintiffs reargue all positions previously taken, and additionally argue that their act of filing the Complaint and FAC was sufficient to provide substantial compliance with the NJTCA.  (*See id.*)  However, this overlooks the fact that the New Jersey Supreme Court, in no uncertain terms, has stated "even the most generous application of the substantial compliance doctrine has rejected the notion that filing a complaint is itself a substitute for notice."  *Cty. of Hudson v. State, Dep't of Corrs.*, 208 N.J. 1, 23 (2011); *see also Noble v. City of Camden*, 112 F. Supp. 3d 208, 233 (D.N.J. 2015) ("[T]he filing of the Complaint in this case does not satisfy the notice requirement [of the

---

[6] [Dkt. No. 166-1] at 1–24.

NJTCA].").  As such, even if the Court considered the merits of Plaintiffs' Motion, this argument

would also fail.

### iii.   *Heck* Bars Excessive Force Claims During Panarello's Arrest

With respect to the claims of excessive force that the Court ruled barred by the *Heck*

doctrine, Plaintiffs' arguments present a misunderstanding of the Court's ruling and the specific

findings of Judge Smith in affirming Panarello's conviction.  Plaintiffs appear to argue that the

Court based its ruling on the mere fact that Judge Smith affirmed Panarello's conviction for

resisting arrest.  (*See* Pls.' Mot. Br. at 14–15.)  They further submit that the only findings of fact

on the issue of whether Panarello was entitled to use force in resisting his arrest comes from the

findings of Judge Golden.  (*See id.* at 15.)  These are both incorrect.

If the facts were as Plaintiffs present them, that the only findings of fact in this matter

were the findings made by Judge Golden in the initial criminal trial in Municipal Court,

Plaintiffs' argument could possibly have merit.  But those are not the facts.

Judge Smith did not summarily affirm Judge Golden.  Instead, as cited by this Court as

the basis for its opinion, Judge Smith wrote "This Court also found, after giving deference to

Judge Golden's credibility finding that [Panarello] continued to flail after being told he was

under arrest and the record supporting a finding that had appellant stopped resisting then the

force used by the police officer would also have ceased, [Panarello]'s self-defense claim fails."

*Summ. J. Op.*, 2016 WL 475246, at *14–15 & n.22 (quoting Order Aff'g Conviction ¶ 5b, *State*

*v. Panarello*, Muni. Appeal No. A–28–13 (N.J. Super. Ct. Law Div. June 24, 2014)) (alterations

made in quoting source).  It is this very specific finding—that Panarello's proffered self-defense

claim fails—on which the Court based its ruling.  *See id.* at *15.  The Officer Defendants are

correct in their response that in the event a criminal defendant raises the issue of self-defense, the

criminal court must resolve the issue of whether such a defense stands, and subsequently rule on it. (*See* Off. Defs.' Opp. at 9–10 & n.2.) If the ruling is by a judge as opposed to a jury, and the judge enters a specific finding, then any court in a subsequent civil suit under the *Heck* doctrine must abide by it.

The four cases cited by Plaintiffs in an attempt to argue that the Court incorrectly decided this issue[7] all fail to include this critical difference—that the state court made a specific ruling on the merits of the criminal defendant's right to self-defense. The Court does not disagree here with its prior rulings in other cases or with other judges of this District that "a prior assault conviction does not *per se* bar a subsequent Section 1983 suit for excessive force." *Benhaim*, 79 F. Supp. 3d at 520. But in this factual circumstance, it does.

### iv.   Probable Cause Existed for Aggravated Assault against Ramos and the Weapons Offenses

Plaintiffs argue that the Court incorrectly determined that probable cause existed for the charges of aggravated assault against Ramos and the two weapons offenses, apparently on the grounds that the Court believes Plaintiffs admitted that Panarello swung the board at Ramos, and based on Judge Golden dismissing charges relying on surveillance tape that Riggione should have viewed. (Pls.' Mot. Br. at 18–20.) Again, this represents Plaintiffs misunderstanding of the Court's decision.

The Court does not think that Panarello has ever admitted that he swung the board at Ramos. Rather, as made clear in the *Summary Judgment Opinion*, Plaintiffs admitted that at the

---

[7] *Benhaim v. Borough of Highland Park*, 79 F. Supp. 3d 513 (D.N.J. 2015); *Elliot v. Gloucester City*, Civ. No. 12-7440 (RBK/JS), 2014 WL 3446496 (D.N.J. July 11, 2014); *Woodley v. Al-Ayoubi*, Civ. No. 09-1403 (KSH), 2011 WL 4594204 (D.N.J. Sept. 27, 2011); *Weber v. Rodriguez*, Civ. No. 07-2097 (RBK/KMW), 2011 WL 2555358 (D.N.J. June 27, 2011).

time the various officers authored the charging documents, "the officers *heard* from Ramos, the victim, and his wife that Panarello had attempted to strike Ramos with a wooden board, but had failed to make contact."  2016 WL 475246, at *19 (citing Pls.' Resp. to Off. Defs.' SMF at 2–3) (emphasis added).  There was no finding that Panarello *did* attempt to strike Ramos; the Court relied on the fact that Ramos and his wife *reported* that to the officers, which was sufficient to provide them with probable cause at the time.

Plaintiffs also submit that Riggione should have been aware of video surveillance that he alleges conclusively showed that Panarello did not attempt to strike Riggione, and rely on Judge Golden's interpretation of the video evidence at the municipal court trial.  (Pls.' Mot. Br. at 19–20.)  Plaintiffs state that "Riggione had access to and should have viewed" the surveillance tape.  (*Id.* at 20.)  However, Plaintiffs have not demonstrated that Riggione viewed the surveillance tapes before authoring the charging document.  But even assuming he had, Judge Golden in his decision stated that it was not clear "whether [Panarello] was trying to deflect the water back towards Mr. Ramos or take some kind of affirmative action."  (*Id.* at 19–20 (internal quotations omitted).)  This is not enough to disturb the Court's finding.  Thus, this argument too would fail if the Court considered Plaintiffs' Motion on the merits.

### C.     RAMOS DEFENDANTS

Finally, the Court turns to the letter submitted by counsel for the Ramos Defendants.  The Ramos Defendants request that this Court dismiss the conspiracy claims against both Ramos Defendants, and also dismiss the common law assault and battery claims against Ramos only.  (Ramos Letter at 1.)  Plaintiffs have consented to dismissing the conspiracy claims, (Third McFadden Letter at 1), so in that respect, the Court will order dismissal of the conspiracy claims against the Ramos Defendants, and dismiss Jeannie Ramos as a party to this action.

With respect to the assault and battery claims against Ramos, this request is opposed by Plaintiffs.  The Court finds the request inappropriate, and will deny it.  The Court considers the Ramos Letter a motion for reconsideration, and as noted before, a motion for reconsideration is "*not* an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers."  *Bowers*, 130 F. Supp. 2d at 614.  Ramos made no motion for summary judgment, and makes no argument now why his failure to file any motion for summary judgment should be excused.  Further, the portion of the *Summary Judgment Opinion* relied on by Ramos in his letter urging dismissal of the assault and battery claim against him relate to why the *Heck* doctrine bars claims of assault and battery against the officers who arrested him.  (*See* Ramos Letter at 1 (citing *Summ. J. Op.*, 2016 WL 475246, at *8–9).)  This has no bearing on the claim of assault and battery against Ramos.  Accordingly, Ramos's request will be denied, and the claim of assault and battery will remain.

## V.       CONCLUSION

For the foregoing reasons, the Riggione Motion is GRANTED, Plaintiffs' Motion for Leave is DENIED, Plaintiffs' Motion is DENIED, the Officer Defendants' Cross Motion is GRANTED, and the request of the Ramos Letter is GRANTED-IN-PART AND DENIED-IN-PART.

Following this opinion, the remaining claims are:

- Count II, § 1983 claim, and Count XII, NJCRA claim, against:

  - Officers Laielli and Shaw for warrantless entry into Plaintiffs' backyard only in violation of the Fourth Amendment

  - Officers Laielli and Shaw for warrantless arrest in Plaintiffs' backyard in violation of the Fourth Amendment

- o Officer Armstrong for excessive force in transporting Panarello to the police station in violation of the Fourth Amendment

- o Officer Day for excessive force in using OC spray on Panarello at the police station in violation of the Fourth Amendment

- Count VI, assault and battery claim against Ramos

Consistent with this opinion, there are now no claims pending against Jeffrey Riggione or Jeannie Ramos, and they will be dismissed from the action.  An appropriate order accompanies this opinion.


Date:  July  7th , 2016


  s/ Robert B. Kugler                              
ROBERT B. KUGLER, U.S.D.J.